Norfolk

## CALVIN FLETCHER RUFFIN

v.

## COMMONWEALTH OF VIRGINIA

No. 0791-89-1

Decided September 24, 1991

COUNSEL

Andrew M. Sacks (Sacks & Sacks, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

WILLIS, J.—The appellant, Calvin Fletcher Ruffin, contends that the trial court erred in receiving into evidence contraband recovered upon the warrantless search of his person. We find no error and affirm.

On September 25, 1987, Investigator James Stevens and other officers executed a search warrant on the premises located at 937 Trice Terrace, Apartment B, Norfolk, Virginia. The warrant commanded a search for illegal drugs and was based on an affidavit stating that Joseph Bonner was selling cocaine there. The affidavit stated that Bonner, whom the officers did not know, was armed and dangerous. As they entered the premises, the officers encountered the appellant leaving a bedroom. Pushing him back into the bedroom, they found there another man and, in plain view, a large sheet of glass, some razor blades and white powdery residue which they believed to be cocaine. The appellant fit Bonner's general description. After the other man attempted to draw a weapon, the officers removed him and the appellant to another room, where Officer Stevens placed the appellant against a wall and frisked him for weapons. Officer Stevens felt on the appellant's right foot, inside his sock, an object about an inch square and a quarter of an inch thick. Because the search authorized by the warrant was for cocaine, because the officers had found evidence of cocaine, and

because he thought the appellant might be Bonner, Officer Stevens believed that the object in appellant's sock might be a controlled substance. Officer Stevens pulled open the sock and discovered a package of marijuana. He then arrested the appellant for possession of marijuana, and upon searching him pursuant to that arrest, found a straw containing cocaine residue.

The appellant first argues that his mere presence in the room did not authorize the warrantless frisk of his person. We disagree. Officer Stevens had before him evidence that he had discovered a cocaine distribution operation. The appellant was on the scene in plain view of the contraband. This rendered inescapable the suspicion that he was involved in that operation and possessed drugs. This suspicion was enhanced by the appellant's similarity to the reported description of Bonner, a man known to be armed and dangerous. The other man tried to pull a weapon. Under these circumstances, Officer Stevens was justified in detaining the appellant for inquiry and in frisking him for weapons. *See Terry v. Ohio*, 392 U.S. 1 (1968).

The appellant next argues that Officer Stevens was without authority to remove and examine the packet which the frisk revealed under his sock. He argues that even were the frisk permissible, it was limited to a search for weapons, and the packet plainly was not a weapon. He argues that the further intrusion of removing the packet exceeded the scope and authorization of *Terry* and was unlawful in the absence of a warrant. We hold that the seizure of the packet fell within the plain view exception to the warrant requirement as articulated in *Coolidge v. New Hampshire*, 403 U.S. 443 (1971).

The plain view doctrine, articulated by *Coolidge*, permits the warrantless seizure of private possessions where three requirements are met. First, the "initial intrusion" of the police officer must be lawful or he must otherwise properly be in a position from which he can view the location of the seizure. *Id.* at 465-68. Second, the discovery of the item seized must be inadvertent. *Id.* at 470. Third, it must be "immediately apparent" to the police officer that the item he observes may be evidence of a crime, contraband, or otherwise subject to seizure. *Id.* at 466. In *Horton v. California*, ___ U.S. ___, 110 S. Ct. 2301, 2304 (1990), the Supreme Court eliminated the necessity of the inadvertence requirement. Thus, two requirements must be met for the applica-

tion of the plain view doctrine. First, the police officer must be lawfully present. Second, it must be "immediately apparent" to the police officer that the item to be seized may be evidence of a crime, contraband or otherwise subject to seizure.

Officer Stevens' presence, the laying of his hand upon the appellant's foot, was lawful pursuant to a *Terry* frisk. Therefore, the central inquiry in this case is whether it was "immediately apparent" that the object which he detected under the appellant's sock was evidence of a crime, contraband or otherwise subject to seizure.

 The "immediately apparent" language of *Coolidge* does not require that a police officer "know" that an item is contraband or evidence of a crime before seizing it. "[T]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *Payton v. New York*, 445 U.S. 573, 587 (1980). A requirement of probable cause for seizure in the ordinary case is consistent with the fourth amendment. *Texas v. Brown*, 460 U.S. 730, 738 (1983). Thus, if, while lawfully engaged in a particular place, police officers "perceive" a suspicious object, they may seize it immediately. *Id.* at 739 n.4. Perceive means to attain awareness or understanding of, to become aware of through the senses. *Webster's New Collegiate Dictionary* 1675 (3d ed. 1986). *See also State v. Washington*, 134 Wis. 2d 108, 396 N.W.2d 156 (1986). Thus, our inquiry addresses the nature of probable cause and whether Officer Stevens' perception of the object under the appellant's sock gave him probable cause to believe it to be contraband.

[P]robable cause is a flexible, common sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, non-technical" probability that incriminating evidence is involved is all that is required. . . .

The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-

sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Brown*, 460 U.S. at 742.

In *Brown*, a Fort Worth, Texas, police officer at a routine license check point stopped a vehicle driven by Brown. Shining his flashlight into the car, the officer saw an opaque, green party balloon, knotted about one-half inch from the tip. Based on his experience, he recognized this as a manner in which narcotics frequently were packaged, and he seized it. The balloon contained heroin, and Brown was convicted of possession of heroin. The Texas Court of Appeals reversed the conviction, holding the seizure of the balloon to be a violation of the fourth amendment because the mere presence of the balloon did not present contraband in plain view to the officer. *Id.* at 730-32. The Supreme Court of the United States reversed that decision. It first found lawful the stop of the vehicle and the officer's view of the interior with the aid of a flashlight. It went on to hold:

With these considerations in mind it is plain that Officer Maples possessed probable cause to believe that the balloon in Brown's hand contained an illicit substance. Maples testified . . . that balloons tied in the manner of the one possessed by Brown were frequently used to carry narcotics. . . . The fact that Maples could not see through the opaque fabric of the balloon is all but irrelevant: the distinctive character of the balloon itself spoke volumes as to its contents—particularly to the trained eye of the officer.

*Id.* at 742-43.

In *Harris v. Commonwealth*, 241 Va. 146, 400 S.E.2d 191 (1991), our Supreme Court rejected as a fourth amendment violation the seizure and opening of a film canister discovered on Harris' person during a *Terry* frisk. Citing *Horton v. California*, ____ U.S. ____, 110 S. Ct. 2301 (1990), the Court noted that a warrantless seizure pursuant to the plain view exception must meet two requirements. "First, not only must the item be in plain view, its incriminating character must also be 'immediately appar-

ent.' Second, not only must the officer be lawfully located in a place from which the object may be plainly seen, but he or she must also have a lawful right of access to the object itself." *Id.* at 153, 400 S.E.2d at 195. The Court further noted, "[a]dditionally, the police must have probable cause to believe that the item in question is evidence of a crime or is contraband." *Id.* Holding that the presence of the film canister did not give Officer Von Canon probable cause to believe it to contain contraband and to justify his seizure of it, the Court said:

It is true that Von Canon knew from his personal experience of working "plain clothes assignments" and "making arrests" that certain people kept their narcotics and drugs in film canisters and "things of that nature." However, law-abiding citizens, on a daily basis, also use film canisters to store film, which is a legitimate use. At best, Von Canon had a "hunch" and a report from an informant. However, the record in this case does not contain any evidence that the informant was reliable or credible.

*Id.* at 154, 400 S.E.2d at 196.

The object detected by Officer Stevens was not a facially innocent vessel of a type employed by law-abiding citizens, on a daily basis, for legitimate uses. It was, on the contrary, an unnatural mass, carried in a manner of concealment, consistent with the transportation of illegal drugs. The circumstances surrounding the discovery, the nature of the search warrant, the items found at the scene indicating a drug dealing operation, the attempt by the other man to draw a weapon, and the discovery of the packet under the appellant's sock gave Officer Stevens probable cause to believe that it contained illegal drugs and authorized its seizure.[1]

The discovery of cocaine upon the search of the appellant pursuant to his arrest on the marijuana charge is not contested in this

---

[1] In *Carson v. Commonwealth*, 12 Va. App. 497, 404 S.E.2d 919 (1991) (rehearing en banc granted), we upheld the seizure of a one and one-half to two inch straw, recognized by the police officer as being of a type commonly used in connection with cocaine ingestion. Finding that the straw lacked the facial innocence of the film canister in *Harris*, we recognized the possibility that it might have a legitimate use, but finding the opportunities for such use to be "rare indeed," we held that "the officer's common sense along with his law enforcement experience made it immediately apparent to him that the straw might be evidence of a crime." *Id.* at 503, 404 S.E.2d at 923.

appeal.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Baker, J., and Barrow, J., concurred.