UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judge O'Brien, and Senior Judge Haley
Argued at Norfolk, Virginia

STEPHONE AMOS FOREMAN

MEMORANDUM OPINION[*] BY
v.      Record No. 0401-15-1          CHIEF JUDGE GLEN A. HUFF
                                       DECEMBER 22, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Glenn R. Croshaw, Judge

Kimberly R. Smith, Assistant Public Defender, for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Stephone Amos Foreman ("appellant") appeals his conviction of possession of a

Schedule I or II controlled substance, in violation of Code § 18.2-250. After a bench trial in the

Circuit Court of the City of Virginia Beach ("trial court"), appellant was sentenced to ten years

in prison with eight years suspended. On appeal, appellant argues that the "trial court erred by

denying appellant's motion to suppress inasmuch as the evidence was obtained in violation of the

Fourth Amendment of the Constitution of the United States in that Officer Krause lacked specific

and articulable facts to reasonably conclude that appellant was armed and dangerous." For the

following reasons, this Court affirms the trial court's ruling.

I. BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial."

Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*)

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)).  So viewed, the evidence is as follows.

Around 2:00 a.m. on November 24, 2013, Officers Christopher J. Mackie ("Mackie") and Nick Krause ("Krause") of the Virginia Beach Police Department conducted a traffic stop of a "black Ford SUV" for a "missing tag light."  The stop occurred in "a high-crime area."  Daniel Lee Upshur ("Upshur") was driving the vehicle, and appellant was sitting in the passenger seat.  Mackie approached the driver side of the vehicle while Krause approached the passenger side.

The passenger window was up, and Krause observed that appellant "was holding something in his right hand with a clenched fist."  Krause testified that the object "was kind of shiny" and that he believed "it could be some type of weapon, possibly a knife, maybe even a small handgun."  Krause asked appellant "what was in his hand," but appellant "clenched his fist even tighter and attempted to put his hand into his right pants pocket."  Krause asked appellant to exit the vehicle, but appellant "just . . . sat there continuing to try to dig his hands into his right pants pocket."  Krause informed Mackie that appellant had something in his right hand and, "believ[ing] it was a weapon of some sort," attempted "to open the passenger side door."  The door was locked, however, and appellant did not respond to Krause's orders "to unlock the door."

Mackie testified that as he approached the vehicle, appellant appeared "nervous."  While speaking to Upshur regarding the traffic infraction, Mackie observed that appellant had "something in his hand clenched."  Mackie testified that he noticed this because he told appellant "to put his hands flat on his lap," but appellant "refused to do so."  Mackie testified that appellant "looked directly at me" and "began to reach into his pockets."  At this point, Mackie "reached in through the driver's window and hit the unlock button."  Krause then "opened the passenger side door[] and . . . grabbed [appellant] to take him out of the vehicle."  Krause testified that as he was taking appellant out of the vehicle, appellant "dropped the item [that he was holding] onto the right-side floorboard

of the passenger side of the vehicle." Krause conducted a pat-down search for weapons on appellant's person, but found none. He then returned to the vehicle where he observed, on the passenger side floorboard, a three-inch glass tube "with some white residue in it" that was later determined to be cocaine.

On April 29, 2014, the trial court heard appellant's motion to suppress the cocaine as the result of an illegal search. During this hearing, Krause testified that he was not "one hundred percent sure" that Foreman had a weapon, and when pressed during cross-examination stated that he was "fifty percent sure" that it could have been a knife or firearm. He also testified that he was concerned that appellant's efforts to put his fist into his pocket were attempts to conceal or get a weapon. Ultimately, Krause testified that he removed appellant from the vehicle to discover whether he had a weapon in his hand and to make sure that he did not have any other weapons on his person.

The trial court denied appellant's motion to suppress, and the matter proceeded to a bench trial on September 15, 2014. The trial court found appellant guilty of possession of a Schedule I or II controlled substance, in violation of Code § 18.2-250. This appeal followed.

## II. ANALYSIS

On appeal, appellant contends that the trial court erred by denying his motion to suppress. Specifically, appellant argues that Krause lacked reasonable, articulable suspicion to frisk appellant and, therefore, the evidence found as a result of that frisk should have been suppressed.

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." McCain v. Commonwealth, 275 Va. 546, 551, 659 S.E.2d 512, 515 (2008) (citing Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)); see also Ornelas v. United States, 517 U.S. 690, 691, 699 (1996). Under this standard, "we give deference to the factual

findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." McCain, 275 Va. at 551, 659 S.E.2d at 515 (citing Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002)). On appeal, "[t]he defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error." Id.

"In assessing the propriety of the trial court's ruling, we keep in mind that the [F]ourth [A]mendment does not proscribe all searches and seizures, only those that are 'unreasonable.'" Stanley v. Commonwealth, 16 Va. App. 873, 874-75, 433 S.E.2d 512, 513 (1993) (quoting Terry v. Ohio, 392 U.S. 1, 9 (1968)). "Whether the Fourth Amendment has been violated is a question to be determined from all the circumstances." McCain, 275 Va. at 552, 659 S.E.2d at 515-16 (citing Samson v. California, 547 U.S. 843, 848 (2006)). Additionally, "[r]eview of the existence of probable cause or reasonable suspicion involves application of an objective rather than subjective standard." Id. at 552, 659 S.E.2d at 516 (citing Terry, 392 U.S. at 21-22).

It is well settled that a "police officer may stop a person for the purpose of investigating possible criminal behavior even though no probable cause exists for an arrest." Id. To justify such an investigatory stop, an officer must have "reasonable, articulable suspicion that criminal activity is afoot." Id. (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). In the context of a traffic stop, an officer may "stop [a vehicle] when he has reasonable suspicion to believe a traffic or equipment violation has occurred." McCain, 275 Va. at 553, 659 S.E.2d at 516 (citing Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923-24 (2000)). "The authority to conduct a pat-down search," however, "does not follow automatically from the authority to effectuate an investigative stop." Harris v. Commonwealth, 262 Va. 407, 412-13, 551 S.E.2d 606, 609 (2001). "Only where [an] officer can point to particular facts from which [the officer]

- 4 -

reasonably inferred that the individual was armed and dangerous is he justified in searching for weapons." Williams v. Commonwealth, 4 Va. App. 53, 66, 354 S.E.2d 79, 86 (1987).

Appellant's assignment of error challenges the trial court's denial of the motion to suppress on the ground that reasonable and articulable suspicion did not exist to justify the frisk. This argument fails, however, because the contraband was not discovered as a result of the frisk, but rather was discovered in plain view, after appellant was lawfully removed from the vehicle.

In Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977), the United States Supreme Court held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches or seizures." See also Lowe v. Commonwealth, 33 Va. App. 656, 661, 536 S.E.2d 454, 457 (2000) (holding that the "generalized risk to officer safety" during a traffic stop "permits officers to order occupants to exit a lawfully stopped vehicle"). The evidence in the present case demonstrated that Upshur's vehicle was lawfully detained for a "missing tag light" and that appellant was acting evasively and disregarding the officers' commands during the traffic stop. Consequently, Krause first ordered appellant to exit the vehicle and then, when appellant ignored this order, forced him out of the vehicle. Appellant does not challenge that it was constitutionally reasonable in the present case for Krause to force appellant out of the vehicle during the lawful traffic stop, but rather appellant only argues that the frisk of his person was not justified. See Harris v. Commonwealth, 27 Va. App. 554, 563, 500 S.E.2d 257, 261 (1998) ("[T]he police are permitted to use methods of restraint that are reasonable under the circumstances.").

As appellant was being removed from the vehicle, but before Krause began the frisk of appellant's person, he dropped the contraband onto the vehicle's floorboard, in Krause's plain view. Under "the plain view exception to the warrant requirement," "an officer must meet two

requirements: first, he must be lawfully in a position to 'perceive' a suspicious object, and second, he must have probable cause to believe it to be contraband." Arnold v. Commonwealth, 17 Va. App. 313, 317-18, 437 S.E.2d 235, 238 (1993) (quoting Ruffin v. Commonwealth, 13 Va. App. 206, 208-09, 409 S.E.2d 177, 179 (1991)).

As applied in the present case, Upshur's vehicle was lawfully stopped for a "missing tag light," and appellant dropped the contraband into plain view while Krause was removing him from the vehicle. Then, upon seeing the object, Krause had probable cause to believe it was, in fact, contraband. Specifically, he testified that it was a three-inch glass tube "with some white residue in it," which he believed to be a "crack pipe" based upon his "training, knowledge, and experience." Thus, the contraband was not discovered as a result of the frisk, as appellant's assignment of error assumes, but rather was discovered in plain view. Therefore, the denial of appellant's motion to suppress, which argued that the frisk was unconstitutional, was not error.

### III. CONCLUSION

Based on the foregoing, this Court affirms the trial court's ruling.

Affirmed.