COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judge Elder and Senior Judge Bumgardner
Argued by teleconference

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
CHIEF JUDGE WALTER S. FELTON, JR.
MARCH 8, 2011

v.      Record No. 1976-10-2

BRANDON MARSHALL TURNER

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellant.

(Michael T. Hemenway, on brief), for appellee. Appellee submitting
on brief.

Brandon Marshall Turner ("Turner") was indicted by the Circuit Court of Albemarle County

("trial court") for possession of cocaine with intent to distribute, second or subsequent offense, in

violation of Code § 18.2-248, and possession of marijuana with intent to distribute, in violation of

Code § 18.2-248.1. Prior to trial, Turner filed a motion to suppress evidence obtained in a search of

his person following a traffic stop during which officers found marijuana in the car he was driving.

Turner asserted that the search of his person was in violation of his Fourth Amendment right against

unlawful search and seizure. The trial court granted Turner's motion to suppress. The

Commonwealth appealed to this Court, pursuant to Code § 19.2-398(A)(2).

I. BACKGROUND

On the night of March 22, 2010, Officer Andrew Holmes of the Albemarle County Police

Department conducted a traffic stop after Turner failed to dim his high-beam headlights for

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

oncoming traffic. Turner was the sole occupant of the car.[1] Officer Holmes knew Turner was on probation as a result of a previous "buy bust" operation during which Turner sold illegal drugs to an informant. When Officer Holmes asked Turner for his operator's license and car registration, he observed what he believed to be marijuana "shake"[2] in the center console of the car, near the shift column. As a result of his observation, he requested Officer Hooper come to the location with his narcotics detection dog.

Officer Holmes was in the process of issuing the traffic summons to Turner when Officer Hooper arrived.[3] Officer Holmes explained the situation to Officer Hooper, and directed Turner to step out of the car.

Officer Hooper then walked his narcotics detection dog, Bink, around the car. Bink alerted and indicated the presence of narcotics in Turner's car on the driver's side front grill area as well as the driver's side door handle.[4] Based on the dog's actions, Officer Hooper informed Officer Holmes that the odor of narcotics was coming from the vehicle.

Officer Holmes asked Turner to remain at the police vehicle while the officers searched his car. During the search, Officer Holmes confirmed that the "shake" on the center console was marijuana. Officer Holmes also found a partially smoked cigar in the ashtray. A field test of the partially smoked cigar was positive for marijuana.

---

[1] The car was registered to Turner's mother.

[2] Officer Holmes defined "shake" as "[s]mall particles of marijuana. What's commonly broken off the larger marijuana bud for a marijuana blunt - - - a marijuana joint."

[3] Officer Holmes requested information from police dispatch regarding Turner's operator's license because Turner did not have his license with him.

[4] Officer Hooper testified that Bink is "passive indication, so he sits" to indicate the odor of narcotics. An "alert" by a drug dog is "a number of different things . . . increased sniffing, . . . increased tail wag speed, . . . interest in a particular area."

After the officers completed the search of the car, Officer Holmes handcuffed Turner and began to search him. He told Turner twice that he was not under arrest. He also told Turner, "[g]ive me two seconds and you will be on your way" and "you're not getting charged with anything." In response to Turner's inquiry of whether he would have to go to jail for the marijuana cigar, Officer Holmes responded, "no, you don't go to jail for that." At that point during the search, Officer Holmes discovered a plastic shopping bag containing cocaine and a scale in the back of Turner's pants.

At the hearing on Turner's motion to suppress the evidence seized during the search of his person, Officer Holmes testified that he believed he had probable cause to arrest Turner for possession of marijuana when he searched him. After hearing the evidence and argument of counsel, the trial court stated:

> in this case [Turner] was, obviously, taken into custody handcuffed, but he was not under arrest. There was no search incident to arrest that the Court can find, based upon the statements of Officer Holmes. In fact, Officer Holmes makes it very clear he's not placing [Turner] under arrest, that he's searching for whatever reason, but it's not incident to arrest, because had they not found anything Officer Holmes makes it clear, in another two seconds, his word, [Turner] would have been free to go. . . . I find, therefore, that it's not a search incident to arrest.

The trial court then granted Turner's motion to suppress the evidence seized from him during Officer Holmes' search of his person.

## II. ANALYSIS

On the appeal by the Commonwealth of a trial court's pre-trial order granting a motion to suppress evidence, we view the evidence in the record in the light most favorable to the accused, the prevailing party below, granting to the evidence all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "Whether an officer has probable cause to arrest an individual in the absence of a warrant is

- 3 -

determined under an objective test based on a reasonable and trained police officer's view of the totality of the circumstances." Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005). In cases involving the Fourth Amendment, "we give deference to the historical facts determined by the trial court, but we review de novo whether the legal standard of probable cause was correctly applied to the historical facts." Id. "To determine whether probable cause exists, we 'will focus upon what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control.'" Id. (quoting Taylor v. Commonwealth, 222 Va. 816, 820-21, 284 S.E.2d 833, 836 (1981) (quotations omitted)).

"A general rule recognized by both federal and state courts is that when probable cause exists to arrest a person, a constitutionally permissible search of the person incident to arrest may be conducted by an officer *either before or after* the arrest if the search is contemporaneous with the arrest." Italiano v. Commonwealth, 214 Va. 334, 336, 200 S.E.2d 526, 528 (1973) (per curiam).

> When the evidence shows that probable cause exists for arresting a suspect for a felony, and it is clear that evidence seized in a contemporaneous search of the suspect's person was not necessary to establish probable cause, the search is incidental to the arrest and is valid whether it takes place at the moment the arresting officer takes the suspect into custody or when he announces that the suspect is under arrest.

Howard v. Commonwealth, 210 Va. 674, 678, 173 S.E.2d 829, 833 (1970). "Probable cause exists where the facts and circumstances known to the officer warrant a man of reasonable caution in believing the suspect has committed an offense." Id.

While the trial court properly found that the information possessed by Officer Holmes before he conducted the search was "sufficient for probable cause," it erred in holding that a formal arrest must precede the search of a suspect's person. An officer who has probable cause to arrest a person for possession of unlawful substances may conduct a search of that person

prior to formally arresting him. Id. See Williams v. Commonwealth, 21 Va. App. 263, 463 S.E.2d 679 (1995) (holding search of Williams prior to formal arrest permissible where officers had probable cause to believe Williams possessed illegal narcotics); Buck v. Commonwealth, 20 Va. App. 298, 304, 456 S.E.2d 534, 537 (1995) (upholding search of Buck prior to formal arrest because "[w]hen an officer has probable cause to arrest a person, the officer may search the person, particularly where the evidence is of a highly evanescent nature"); Poindexter v. Commonwealth, 16 Va. App. 730, 733-34, 432 S.E.2d 527, 529 (1993) ("if the police have probable cause to effect an arrest, a limited search may be justified even in the absence of a formal arrest" (citing Cupp v. Murphy, 412 U.S. 291, 295-96 (1973) (upholding the taking of fingernail scrapings from murder suspect who was not contemporaneously arrested))). The officer's statements to Turner that he was not under arrest did not change the fact that he had probable cause to arrest Turner for possession of marijuana.

For the foregoing reasons, we hold that the trial court erred in granting Turner's motion to suppress.

### III. CONCLUSION

We hold that the trial court erred when it granted Turner's motion to suppress. Accordingly, we reverse the trial court's order granting the motion to suppress and remand for trial.

Reversed and remanded.