COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Petty and Beales
Argued by teleconference

MICHAEL HARRIS, S/K/A
 MICHAEL WAYNE HARRIS

                                                         MEMORANDUM OPINION* BY
v.        Record No. 1149-16-2                           JUDGE RANDOLPH A. BEALES
                                                         JULY 5, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUISA COUNTY
Timothy K. Sanner, Judge

Reed C. Amos (Amos & Amos, PLLC, on briefs), for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Appellant was indicted by a grand jury on November 9, 2015 on two charges of possession

of a Schedule II controlled substance in violation of Code § 18.2-250. On February 1, 2016,

appellant filed a pre-trial motion to suppress evidence obtained by law enforcement during a

warrantless search and seizure. After a hearing on the motion to suppress on February 18, 2016, the

trial court denied appellant's motion. After a bench trial, the trial court found appellant guilty as

charged and sentenced appellant to four years in prison, with three years and eight months

suspended. On appeal, appellant argues the trial court erred in denying his motion to suppress.

I. BACKGROUND

We consider the evidence on appeal "in the light most favorable to the Commonwealth, as

we must since it was the prevailing party" in the trial court. Beasley v. Commonwealth, 60

Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

330, 601 S.E.2d 555, 574 (2004)). So viewed, the evidence established that Sergeant Robert Hix of the Louisa County Sheriff's Office responded to a 911 call on June 1, 2014. The 911 call informed the authorities of an altercation involving an individual armed with a knife outside of a home on Labor Lane. When Hix arrived at that location at approximately 11:21 a.m., he observed two males standing on opposite sides of a roadway. Timothy Harris, appellant's brother ("the brother"), was standing about twenty feet away from appellant. When Hix arrived, he observed appellant holding a folding knife with a three to four-inch blade. The knife was in appellant's right hand, and the blade was unfolded. As Hix arrived in his marked police vehicle, he observed appellant place the knife on the hood of the parked car. Appellant then walked to the rear of the vehicle as Sergeant Hix parked his service vehicle.

Sergeant Hix got out of his vehicle and immediately handcuffed appellant. He explained to appellant that he was detaining appellant for the purposes of officer safety based on the reported altercation involving a knife. Hix testified that he performed a pat-down of appellant to make sure there were no other weapons on him besides the folding knife that appellant had just placed on the parked car. While patting down appellant's right front pants pocket, Hix felt a hard object approximately one inch in length. Hix then reached into that pocket and removed the item. The item in question was a small glass vial that contained a substance later determined to be PCP. After Hix had removed the vial, appellant stated, "[T]hat's nothing but my PCP that I use for pain management." Hix testified that he removed the item from appellant's front right pocket because he wanted to make sure it was not a weapon. He testified that he had encountered "knives as short as an inch" in his experience as a law enforcement officer. On cross-examination, he admitted that he did not know what the item was just by feeling it through appellant's pants.

Sergeant Hix also patted down appellant's left front pocket and noticed an object that felt like a cigarette pack. Hix removed the item from the pocket and determined that it *was* a cigarette pack. Upon opening the pack, Hix discovered a glass tube that appeared to be a smoking device. The burnt residue found on the device was later determined to be cocaine. Hix testified that he opened the cigarette pack to make sure that the pack did not contain any weapons, such as razor blades. Sergeant Hix placed the contraband on top of his police vehicle. During this interaction, Sergeant Hix spoke to appellant about the incident. Appellant told Sergeant Hix that he "pulled the knife to keep [the brother] from leaving him" at the home of his estranged wife.

As Sergeant Hix concluded his interaction with appellant, a second law enforcement officer arrived at the scene. Once the second officer arrived on the scene, Hix went to speak with appellant's brother. The brother testified that he was driving appellant to the home of appellant's estranged wife because the brothers had "had a falling out." The brother stopped the car outside the wife's home and began to place appellant's belongings out on the wife's property by the edge of the road. Because appellant had previously been ordered not to trespass on his wife's property, appellant protested and asked his brother to drive him to Maryland, but the brother refused. The brother then grabbed appellant by the arm and tried to pull appellant out of the car. Appellant then told his brother that he would stab him if he did not let him go.

Appellant then called the sheriff's department "to try to get them to do something about [the brother] trying to force him to stay on the property that he wasn't supposed to be on." The brother heard appellant tell the dispatcher over the phone that appellant had a knife and that he would cut the brother's car seats with it. Appellant then took the knife out of his pocket and unfolded the blade while he remained on the phone. The brother told Sergeant Hix that he was

afraid when appellant pulled out the knife.[1]  When Hix completed his interview of the brother, he arrested appellant at 11:56 a.m. for misdemeanor assault.

At the suppression hearing, appellant argued that the search and seizure of him were impermissible under Terry v. Ohio, 392 U.S. 1 (1968).  Regarding the vial found in appellant's right pocket, the trial court found that "given its shape and its extremely small dimensions, no officer could have reasonably taken the glass vial for a knife or any other weapon."  The court noted that Hix acknowledged in his testimony that "he did not know what the item was, and, apparently, he just decided he would find out."  Regarding the removal and subsequent inspection of the cigarette pack, the trial court concluded, "Such actions were plainly not permitted as part of a Terry frisk."  However, the trial court ultimately denied appellant's motion to suppress.  The court concluded, "Having reviewed the evidence, the Court finds that Sergeant Hix, seeing what he did upon his arrival, would have had probable cause to believe that the defendant was assaulting his brother by brandishing a knife at him."  The court specifically found that Sergeant Hix had "probable cause to place the defendant under arrest for the crime of assault and to search him incident to arrest."  The trial court further concluded that the evidence would have been inevitably discovered because "Sergeant Hix had all the beliefs that he needed to make the ultimate discovery and was pursuing this process prior to his excessive searching." Accordingly, the trial court found that "the two items allegedly possessing a controlled substance should not be suppressed, given application of the inevitable discovery doctrine."

---

[1] At the suppression hearing, however, the brother testified that he never felt physically threatened because he and appellant had "threatened each other in the past."

II. ANALYSIS

A. Standard of Review

This Court reviews the trial court's denial of appellant's motion to suppress in accord with familiar principles. In cases involving Fourth Amendment issues, "we give deference to the historical facts determined by the circuit court, but we review *de novo* whether the legal standard of probable cause was correctly applied to the historical facts." Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005).

B. Inevitable Discovery Doctrine

Appellant first argues that the search of appellant's pants pockets exceeded a Terry frisk and was unreasonable. He next argues that the trial court erred when it found that the evidence was admissible pursuant to the inevitable discovery doctrine. Assuming, without deciding, that Sergeant Hix's search of appellant's pants pockets was improper, we conclude the challenged evidence was nevertheless admissible under the inevitable discovery doctrine.

"Ordinarily, evidence obtained as the result of an unlawful search is subject to suppression under the exclusionary rule." Commonwealth v. Jones, 267 Va. 532, 535, 593 S.E.2d 204, 206 (2004) (citing Weeks v. United States, 232 U.S. 383 (1914); Hart v. Commonwealth, 221 Va. 283, 287, 269 S.E.2d 806, 809 (1980)). However, "[o]ne of the exceptions to the exclusionary rule is the doctrine of inevitable discovery." Id. In order to invoke the inevitable discovery doctrine, the Commonwealth must establish by a preponderance of the evidence that the seized items "'ultimately or inevitably would have been discovered by lawful means'" despite the illegal conduct. Id. at 536, 593 S.E.2d at 206 (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)). The inevitable discovery exception permits admission of the challenged evidence if the Commonwealth shows "'(1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police

misconduct'" and "'(2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct.'" Id. at 536, 593 S.E.2d at 207 (quoting United States v. Cherry, 759 F.2d 1196, 1204 (5th Cir. 1985)).

In Jones, the defendant was seen fleeing from law enforcement officers while holding a firearm in his right hand. After Jones was detained, one of the officers searched Jones's person without probable cause and found cocaine in his pocket. The Supreme Court found, because it was the normal practice of that police officer to run a criminal history check when he found someone in possession of a firearm, that it was reasonably probable that the officer would have discovered that Jones was subject to arrest on a weapons charge and searched him incident to that arrest. Id. at 537, 593 S.E.2d at 207. Thus, the Supreme Court applied the inevitable discovery doctrine even though the officer did not obtain Jones's criminal history until *after* Jones had been arrested for possession of the drugs found during the improper search. Id. at 535, 593 S.E.2d at 206. Likewise, in Copeland v. Commonwealth, 42 Va. App. 424, 592 S.E.2d 391 (2004), this Court applied the inevitable discovery doctrine where the record showed that probable cause existed to arrest the defendant for an independent drug possession charge and where a search incident to that arrest would have yielded the other drugs ultimately discovered in the defendant's pocket during the unlawful search. Id. at 438-39, 592 S.E.2d at 397-98.

Returning to the present matter, the Court now applies the two-part test from Jones. First, we find that the evidence recovered from appellant would have been discovered by lawful means but for the alleged police misconduct. The evidence established that Sergeant Hix responded to a 911 call reporting an altercation involving an individual armed with a knife outside of a home on Labor Lane. When Sergeant Hix arrived at that exact address, he observed two males standing on opposite sides of a narrow roadway separated by about twenty feet. One of the males, appellant, was holding a three to four-inch folding knife in his right hand with the blade open and

extended. When appellant saw Sergeant Hix approach in his marked police cruiser, appellant immediately removed the knife from his hand and placed it on the hood of the vehicle next to him. The evidence also established that Sergeant Hix interviewed the brother as part of his investigation. The brother told Hix that appellant had threatened to stab him if he did not drive appellant away from appellant's wife's property. The brother also stated that he felt fear when appellant displayed the knife.

Based on this record, we find that Sergeant Hix, without relying on his search of appellant, developed probable cause to arrest appellant for assault. See Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981) ("Probable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed."). Because Hix had probable cause to believe that appellant had committed an assault, he was also authorized to arrest appellant for assault. Pursuant to that arrest, it follows logically that Hix would have conducted a search of appellant's person incident to the arrest that would have yielded both items of contraband found in appellant's front pants pockets.

Applying the second part of the inevitable discovery test, we find that the lead making the discovery of the drugs in appellant's pockets inevitable was known to Sergeant Hix *prior to* the search of appellant. When Sergeant Hix responded to the scene of a reported altercation involving a subject armed with a knife, he observed appellant holding out a knife in relatively close proximity to his brother. Pursuant to that lead, appellant spoke to the brother, who told Hix that appellant had threatened to stab him and that he felt fear when appellant displayed the knife. Thus, the record is clear that Sergeant Hix's pursuit of leads unrelated to his search of appellant's pockets led him to develop probable cause to arrest appellant for assault. The probable cause to

- 7 -

arrest appellant also permitted Hix to search appellant incident to that arrest, leading inevitably to the discovery of the contraband in appellant's pockets. Accordingly, we find that Sergeant Hix possessed sufficient information and leads prior to the allegedly unlawful search that made the discovery of the drugs inevitable.

As the Supreme Court noted in Jones, the purpose of the inevitable discovery doctrine is to ensure that the prosecution is not "put in a *worse* position simply because of some earlier police error or misconduct when the evidence would inevitably have been discovered." 267 Va. at 538, 593 S.E.2d at 208. Here, if Sergeant Hix had never searched appellant's pockets, Hix still would have obtained probable cause to arrest appellant for assault, arrested him for that offense, and then searched appellant incident to that arrest and discovered the drugs. Therefore, we find that it is clear that there was "'a reasonable probability that the evidence in question would have been discovered by lawful means'" and that "'the leads making the discovery inevitable were possessed by the police at the time of the misconduct.'" Id. at 536, 593 S.E.2d at 207 (quoting Cherry, 759 F.2d at 1204). For these reasons, we find that the trial court did not err in admitting the challenged evidence pursuant to the inevitable discovery doctrine.[2]

---

[2] The trial court also denied appellant's motion to suppress appellant's statement regarding the PCP found in his pocket. The trial court held that no interrogation, or its functional equivalent, had taken place and that appellant was not in custody for the purposes of Miranda v. Arizona, 384 U.S. 436 (1966). On appeal, appellant has not challenged the ruling that no Miranda violation took place. In addition, while appellant argues that the drugs were not subject to the inevitable discovery doctrine, he has not raised that same argument on appeal about inevitable discovery of his initial statements to Sergeant Hix regarding the PCP.

### III. CONCLUSION

In summary, assuming without deciding that Sergeant Hix's search of appellant's pockets was an improper search at the time it was made, we find that the challenged evidence was nevertheless admissible pursuant to the inevitable discovery doctrine. The drugs would have been inevitably discovered by lawful means, given that the information and leads making the discovery inevitable were possessed by the police at the time of the search. Therefore, we find that the trial court did not err in denying appellant's motion to suppress, and we affirm appellant's convictions.

<u>Affirmed.</u>